UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 3:17-cr-00130 |
| | ) | |
| [1] JAMES WESLEY FRAZIER | ) | |
| [2] AELIX SANTIAGO | ) | |
| [3] KYLE HEADE | ) | |
| [8] MICHAEL FORRESTER, JR. | ) | |
| [10] JAMIE HERN | ) | |
| [15] DEREK LEIGHTON STANLEY | ) | |
| [17] WILLIAM BOYLSTON | ) | |
| [18] JASON MEYERHOLZ | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Individualized, Sequestered Voir Dire Regarding Specific Issues (Doc. No. 1457), to which the Government has respond in opposition, (Doc. No. 1491) and Defendants have made a Joint Reply (Doc. No. 1501). For the reasons that follow, Defendants' Motion will be denied.

In their Motion, Defendants begin by listing a number of what they characterize as "highly personal questions" that were propounded in this Court's jury questionnaire sent to each prospective juror. These include whether the juror, a family member, or close friend has ever been: (a) the victim of a crime; (b) the subject of a criminal investigation or charged with a crime; (c) the subject of a claim brought by the United States government; or (d) treated for substance abuse. Other "highly personal questions," according to Defendants, ask (e) if the juror has served in the military, and the circumstances of his or her discharge; and (f) whether the juror has been a party in a civil case. (Doc. No. 1457 at 1-2). Still other "highly personal questions" inquire as to (g) the juror's job history; (h) a spouse's employment; and (I) whether the juror knows of any reason as to why he or she might not

be fit to serve as a juror. (Id. at 2). Additionally, "given current world conditions," Defendants suggest that further "highly personal questions" be added to the list, including (j) whether the jurors "have any current health concerns (COVID-19 related, or otherwise)"; and (k) whether "they are (or may soon be) experiencing employment, child care or financial issues given the current conditions in the United States." (Id.).

Defendants "request that this Court read this list of issues to the jurors and then: (1) inquire whether they would prefer to discuss any of them in camera, outside the presence of other jurors and the public, without requiring the jurors to identify which specific issue(s) they would be more comfortable discussing in private; and (2) ask jurors whether there are any other sensitive issue they would be more comfortable discussing in the Court's chambers." (Id. at 2). Defendants submit "[s]uch a procedure was utilized in this district to highly beneficial effect in United State v. Rodney Cole, MDTN Case No. 3:15-00016 (Judge Wilson)." Id.

Insofar as Defendants want questioning to be conducted in chambers, that request is dead on arrival for one simple reason – size. There are eight defendants scheduled to go to trial, and each has the right to be present at "every trial stage, including jury impanelment." Fed. R. Crim. P. 43; see also Gomez v. United States, 490 U.S. 858, 873 (1989) (noting that a defendant has a constitutional right to be present during all meaningful stages of trial, and this includes voir dire). Those eight defendants are represented by thirteen lawyers, making the subtotal twenty-one. To this must be added the attorneys for the government (three), the Court and its staff (four), and the juror (one), bringing the subtotal now to twenty-nine, not counting the marshals (at least three or four) who are charged by statute with judicial security.

The undersigned's chambers might be viewed by some as larger than most offices but, even

so, there is no way that it will comfortably hold thirty-two individuals who interests do not necessarily coincide. Even assuming Defendants' presence can be secured by their viewing a live feed of the proceedings from the courtroom via realtime such that their's and the deputy marshals' presence are not needed in chambers, that still leaves at least twenty-one individuals. This Court's chambers are not so accommodating.

Furthermore, it is likely that a great deal of time will be needlessly wasted were the Court to follow the procedures suggested by Defendants. Instead of remaining in the courtroom for the duration of voir dire, the Court and counsel would have to repeatedly decamp to chambers, only to return to the courtroom once an issue has been addressed, or a handful of issues involving one juror have been resolved.

Clearly the situation here is different than that presented to Judge Wilson in Cole. There, a single defendant represented by one lawyer was charged in a one-count indictment with bank robbery. Moreover, Judge Wilson is a district judge from the Eastern District of Arkansas who, the Government represents, conducts individual, sequestered voir dire in all of his cases. That certainly is his prerogative, just as it is this Court's practice to allow prospective jurors to approach the bench and answer questions with just the lawyers present when a juror advises that he or she would prefer to answer a particular question in private. See Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) ("Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire."); Ristaino v. Ross, 424 U.S. 589, 594 (1976) (citation omitted) ("Voir dire 'is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion.'").

With the exception of the COVID-19 questions, virtually every issue identified as "highly personal" is inquired into at every trial without problem. Indeed, this Court's experience is that the jurors have no hesitation in joining the queue to the bench when they deem an issue to be personal. This will fully address the Defendants' concerns about being present during juror questioning, Joint Reply at 2-4 (Doc. No. 1501), because all Defendants and their counsel can follow the questioning on the real time monitor. Defendants have presented nothing that remotely suggests that will not be the case here, even as it relates to the Coronavirus pandemic. If the past is any indication, jurors have not been reluctant to inform the Court when health or economic issues may interfere with their ability to focus and sit as fair and impartial jurors.

That said, two caveats are in order. First, because of the novelty of Covid-19 and its nearness in time to the current May 11, 2020 trial date, the Court will consider extending a broader and more open invitation to bench conferences with individual jurors on this issue. This is intended to protect each juror's privacy, as well as to eliminate possible panic among other jurors should it be revealed in open court that one of its members (or a family member) has had the misfortune of contracting the disease.

Second, because of Defendants' alleged affiliation and the centrality of the Mongols motorcycle club to the Third Superseding Indictment, the Court will consider inviting to the bench for questioning jurors who express anything beyond mere knowledge of the existence of that organization. Obviously the Court does not want any prospective jurors blurting out something in open Court that could taint an entire panel.

Both of these caveats can be addressed further at the pretrial status conference scheduled for May 4, 2020. Beyond that, Defendants' Motion for Individualized, Sequestered Voir Dire Regarding

Specific Issues (Doc. No. 1457) is **DENIED.**

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE