UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 3:17-cr-00130 |
| | ) | |
| [1] JAMES WESLEY FRAZIER | ) | |
| [2] AELIX SANTIAGO | ) | |
| [3] KYLE HEADE | ) | |
| [8] MICHAEL FORRESTER, JR. | ) | |
| [10] JAMIE HERN | ) | |
| [15] DEREK LEIGHTON STANLEY | ) | |
| [17] WILLIAM BOYLSTON | ) | |
| [18] JASON MEYERHOLZ | ) | |

## MEMORANDUM OPINION AND ORDER

By way of this Memorandum Opinion and Order, the Court resolves two of the pending Motions to Reconsider in this case:

**1. Government's Motion to Reconsider one Provision of the Court's Order Amending the Protective Order in This Case (Doc. No. 1490).**

On April 2, 2020, the Court entered an Order (Doc. No. 1473) modifying the protective order. Among other things, the Order provided that, as an alternative to taking notes using word processing software, "Defendants shall also be permitted to take handwritten notes that shall be securely stored with the computer at all times." (Id. at 2). The Government objects to this provision because (1) "maintaining and safeguarding an inmate's personal hand-written notes, including ones specifically related to an inmate's legal representation, is a function outside the scope of those normally performed by the detention facilities"; (2) "the facilities are . . . concerned that it may be difficult to account for the paper provided to the inmates on a regular basis"; and (3) the "facilities are further concerned about this condition exposing the facilities to potential liability in the event that something negative occurs involving the hand-written notes." (Doc. 1490 at 12-3). In response, Defendants

state that, "[g]iven the unique circumstances of this case," they have no objection, "so long as defense counsel have access to download the notes taken electronically by defendants on the computer word processing program during in-person attorney-client visits[.]" (Doc. No. 1507 at 1-2).

Accordingly, the Government's Motion to Reconsider (Doc. 1490) is **GRANTED**. This Court's Order (Doc. No. 1473) is **MODIFIED** to eliminate the reference to handwritten notes as set forth in the second sentence of paragraph 4(f), with the understanding that, during attorney-client visits, counsel shall be allowed to download the word processing notes taken by Defendants.

**2. Defendants' Joint Motion for Leave to File (Doc. No. 1508) and Joint Motion to Reconsider This Court's Denial of Their Joint Motion for Individual Sequestered Voir Dire Regarding Specific Issues; and Re-Assertion of Right to be Present During all Questioning of Prospective Jurors on all Substantive Factual and Legal Issues (Doc. 1508-1)**

By Order entered April 10, 2020 (Doc. No. 1503), this Court denied Defendants' Motion for individual sequestered voir dire in this 8-defendant, 16-lawyer case. The Court did so primarily for two reasons: size, and the lack of a showing of need.

In their Motion to Reconsider, Defendants assert that, insofar as the Court was concerned about size, this is an easy fix. Instead of holding individualized voir dire in chambers as they initially requested, such examination could take place in open court:

> For example, the Court could excuse at 2 p.m. jurors who indicated they did not need to answer any questions in private, move the remaining jurors into the jurors' coordinator's area, clear the courtroom of the general public, and from 2:00 to 4:30 p.m. hold separate hearing in the courtroom to allow individual jurors to privately address the sensitive issues set forth in the Defendants' Joint Motion for Individual, Sequestered Voir Dire[.] Or at some point during the day the Court could move the jurors to the jury's coordinators' area, clear the courtroom of the public, and allow jurors individually to return to the courtroom to answer the sensitive questions.

(Id. at 1-2). Then, again, the questioning could occur in chambers as originally requested because

> were this Court to establish a live feed, the Defendants would be willing to have only one attorney per defendant in the Court's chambers, and the Court could limit the government to one attorney as well. Under that scenario, the Defendants calculate the total number of individuals in the Court's chambers would only be 14 (i.e., the Court and its staff (4), the juror (1), and nine (9) attorneys). On information and belief, the Court's chambers are sufficiently large to accommodate 14 individuals.

(Id. at 2-3).

Even ignoring the discomfort jurors are likely to feel by being placed under the microscope Defendants envision, Defendants have not established the need for individual, sequestered voir dire. To the contrary, and as this Court's prior decision pointed out, "virtually every issue identified as 'highly personal' is inquired into at every trial without problem [and] this Court's experience is that the jurors have no hesitation in joining the queue to the bench when they deem an issue to be personal." (Doc. No. 1503 at 4). In fact, the normal and standard procedure of conducting voir dire in open court (with the option for juror's to approach the bench when they deem a question to be sensitive) was utilized with no perceived problems last year in United States v. Darden, Crim. No.. 17-124, a 5-Defendant, 11-lawyer case, involving a host of crimes including a RICO conpiracy, a drug conspiracy, and multiple murders, just as alleged here.

In their Motion to Reconsider, Defendants reiterate that they have a constitutional and statutory right to be present at voir dire, a point not lost on the Court when it issued its prior ruling. See, Id. at 2 (stating that "each [Defendant] has the right to be present at 'every trial stage, including jury impanelment,'" quoting Fed. R. Crim. P. 43, and citing Gomez v. United States, 490 U.S. 858, 873 (1989)). As support, they quote the following from the Ninth Circuit's decision in Reyes v. United States:

> Indeed, other courts have held that the defendant has a statutory right to be present when the district court conducts voir dire at the bench. See, e.g., United States v.

3

> Cuchet, 197 F.3d 1318, 1319–20 (11th Cir.1999) (discussing Rule 43 in concluding that "the district court likely did err in excluding Defendant, over his express objection, from a part of the confidential voir dire of prospective jurors conducted at the bench"); United States v. Ford, 88 F.3d 1350, 1369 (4th Cir.1996) (quoting Rule 43(a) before observing that "the defendants had the right to be present during the bench conferences with the jurors"); United States v. Washington, 705 F.2d 489, 497 (D.C.Cir.1983) (per curiam) ("[T]here is little doubt that under rule 43, the appellant had a right to hear that part of the voir dire conducted at the bench after counsel made his request.").

764 F.3d 1184, 1189-90 (9th Cir. 2014). However, as Reyes's citation to Washington suggests, this does not mean that in every case a defendant has an absolute statutory or constitutional right to stand at the bench with the lawyers and the prospective jurors, or participate in voir dire in chambers:

> While we do not think *the right to be present* during voir dire is on the same level as, for example, entering a plea or the presentation of evidence, the right of the defense to exercise peremptory challenges, which ordinarily is exercised by counsel, *can require direct consultation with the defendant and something more than second hand descriptions of the prospective jurors' responses to questions during voir dire*. Peremptory challenges can be arbitrary and inexplicable; consequently, *a defendant* who requests the court to permit him to participate *should be allowed to obtain as much first hand information as feasible to facilitate his ability to participate in the selection of a jury.*

Washington, 705 F.2d at 497 (emphasis added). Thus, for example, "[w]hen security is a problem or a dangerous defendant or a group of defendants is involved, the right to be present can be satisfied by use of closed circuit television and the opportunity to consult with counsel, if such procedure is considered necessary by the trial court." Id. n.4; see, United States v. Cuchet, 197 F.3d 1318, 1320 (11th Cir. 1999) (recognizing that there may be "unusual circumstances" that make "presence" within the meaning of Rule 43 "infeasible"); United States v. Adekoya, 89 F.3d 824 (1st Cir. 1996) finding "no harm or prejudice to the defendant by her absence at sidebar when individual jurors were questioned" where defendant "heard and observed the initial general questioning by the court, and her counsel was present throughout the sidebar portion").

4

Indeed, in a post Reyes case, the Ninth Circuit observed that "defendants' constitutional right to [be] presen[t] . . . must at times yield to the 'day-to-day realities of courtroom life,' as well as 'society's interest in the administration of criminal justice.'" United States v. Yepiz, 673 F. App'x 691, 698–99 (9th Cir. 2016) (Yepiz I) (quoting Rushen v. Spain, 464 U.S. 114, 119, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)). Thus, in Yepiz I, a RICO, VICAR, and drug conspiracy trial involving 9 alleged members of the Vineland Boys gang, the trial court did not err in holding juror sidebars on sensitive issues in "a jury room adjacent to the courtroom with counsel and a court reporter" present after finding that (1) "it was impossible to move the defendants to the jury room without the prospective jurors noticing their shackles," and (2) "it was equally infeasible to clear the courtroom each time a prospective juror needed to be questioned privately." Id. "The voir dire procedures fashioned by the district court did not violate defendants' constitutional right to be present" because "the district court provided defendants as much ability to observe prospective jurors and participate in the voir dire process as possible in light of the countervailing considerations of security, juror privacy, and courtroom logistics." United States v. Yepiz, 718 F. App'x 456, 463 (9th Cir. 2017) (Yepiz II).

"Because the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the voir dire." Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981). This Court has already explained how it intends to exercise that discretion in this case, and that exercise does not include conducting individualized, sequestered voir dire as requested by Defendants. Accordingly, Defendants' Motion for Leave to File (Doc. 1508) is **GRANTED**, but their Motion for Reconsideration is (Doc. No. 1508-1) is

5

**DENIED.**

    IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE