UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 3:17-cr-00130 |
| | ) | |
| [1] JAMES WESLEY FRAZIER | ) | |
| [2] AELIX SANTIAGO | ) | |
| [3] KYLE HEADE | ) | |
| [8] MICHAEL FORRESTER, JR. | ) | |
| [10] JAMIE HERN | ) | |
| [15] DEREK LEIGHTON STANLEY | ) | |
| [17] WILLIAM BOYLSTON | ) | |
| [18] JASON MEYERHOLZ | ) | |

## MEMORANDUM OPINION AND ORDER

In advance of the three-month trial scheduled to begin on April 6, 2020, the Government provided the eight remaining Defendants with materials covered by the Jencks Act[1], and a witness list. Now that the trial has been continued for a year as a result of COVID-19, the Government has filed a "Motion Seeking Return of Jencks Material and Witness List" (Doc. No. 1575), and submits that the material should be re-disclosed in March 2021.

Two responses in opposition have been filed by Defendants. The first (Doc. No. 1592), filed on behalf of all Defendants (James Wesley Frazier, Aelix Santiago, Kyle Heade, Michael Forrester, Jr, Jamie Hern, Derek Leighton Stanley, William Boylston, and Jason Meyerholz), objects to the return of the materials on three general grounds:

> 1. Any government interests that are protected by the Jencks Act have been resolved by the voluntary disclosure of the materials;
>
> 2. There is no legal authority that supports the return of Jencks materials and witness list;

---

[1] 18 U.S.C. § 3500.

3. Pretrial disclosure benefits parties, counsel, and the Court especially in complex cases such as this one. A return process would be largely ineffective, overly complicated, inefficient, wasteful, and counterproductive. By responsibly retaining information, the parties can preserve resources and further the legitimate goals of trial preparation and/or non-trial resolution.

(Id. at 1). The second, filed solely on behalf of Meyerholz (Doc.. No. 1593), supplements the arguments made by the other Defendants, and asserts that Defendants should be allowed to keep the Jencks material because it contains Brady[2] material as well.

## I.

Whatever facial appeal Defendants' arguments may have are entirely undercut by because they were not constitutionally or statutorily entitled to pretrial disclosure of Jencks Act material or a witness list in the first place. So far as relevant, the Jencks Act provides:

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.
>
> (b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 1800(a) & (b). Rule 16(a)(1) of the Federal Rules of Criminal Procedure lists specific kinds of evidence that must be disclosed to the defense before trial such as statements of the defendant, the defendant's prior criminal record, and reports of physical or mental examinations and tests that the government intends to use in its case-in-chief, but Rule 16(a)(2) specifically states that

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

it does not authorize the pre-trial disclosure of material exempted from pre-trial discovery by the Jencks Act.

As for a witness list, "it is well-settled that the Constitution does not require pretrial disclosure of prosecution witnesses." United States v. Edwards, 47 F.3d 841, 843 (7th Cir. 1995) (citing Weatherford v. Bursey, 429 U.S. 545, 559 (1977)). "Nor does Fed. R. Crim. P. 16, which governs discovery in criminal cases, require such disclosure." Id. Nevertheless, "a district court, consistent with Rule 16 . . . and as part of the court's inherent authority to manage its docket, may in appropriate circumstances require the government to disclose a final list of its proposed trial witnesses and has the authority to enforce such an order." United States v. W.R. Grace, 526 F.3d 499, 513 (9th Cir. 2008); see also, United States v. Caro, 597 F.3d 608, 616 (4th Cir. 2010) (noting that Rule 16 places the decision regarding pre-trial disclosure of witness lists within the sound discretion of the trial court); United States v. Tyson, No. 1:18CR708, 2020 WL 255533, at *6 (N.D. Ohio Jan. 16, 2020) (stating that he Government is not required to disclose its witness list pursuant to Rule 16).

Here, the Jencks Act materials and the Government's witness list were provided on March 10, 2020, in accordance with an Amended Scheduling Order filed September 5, 2018 (Doc. No. 585), that mirrored the proposals from the parties (Doc. No. 574). To the extent the Government "voluntary" agreed to early disclosure – as opposed to accommodating the Court, Defendants, and the jury in order to reduce the number of recesses that could become necessary for review of the material during trial – no one expected what was to come a year and a half later. Only a clairvoyant could have predicted that a virus apparently percolating on the other side of the globe during the late fall and/or early winter of 2019 would halt all in-court appearances in the Middle District of

3

Tennessee the following spring.

In fact, on the very day that the Government made its disclosures, the Court entered a detailed Final Pretrial Order (Doc. No. 1367) setting forth a "rigid schedule" for the trial that was to begin on April 6, 2020. As a result of increasing closures due to COVID-19 and the inability to obtain a sufficient number of prospective jurors willing to serve during the pandemic, however, the trial was rescheduled to May 11, 2020 (Doc. No. 1436), and then to April 1, 2021 (Doc. No. 1574). The Government's agreement to provide Jencks Act material and its witness list a month before trial suddenly became fourteen months.

Given this backdrop, it is hardly surprising that, as Defendants argue, "there is scant caselaw that touches on this issue." (Doc. No. 1574 at 7). So far as the Court can tell, there is none. COVID-19 is a novel coronavirus, not just in name only.

## II.

Defendants cite United States v. Harloff, 826 F. Supp. 675 (W.D.N.Y. 1993) and United States v. Badalamenti, 626 F. Supp. 655 (S.D.N.Y.1985) for the proposition that "there is no legal basis for requiring the return of Jencks materials once it has been disclosed." (Doc. No. 1592 at 7). Defendants are correct, so long as "no legal basis," is read as "no statutory basis." See Harloff, 826 F. Supp.2d at 676 ("As Judge Leval noted [in Badalamenti], if it was intended that § 3500 materials were to be returned either after cross-examination, or after trial, it would have been easy enough for Congress to so provide in the Act."). However, both Harloff and Badalamenti were decided in the context of cases where the Government sought return of the Jencks Act material after it had been used in cross-examination. Yet, as Defendants acknowledge, even in such circumstances, the Sixth Circuit (in an unpublished opinion) held that a trial court did not err "in requiring the return of

4

Jencks Act materials . . . after they were used on cross-examination, and in refusing permission to copy the materials." United States v. Fried, 881 F.2d 1077 (6th Cir. 1989).

This case is in an entirely different procedural posture, and the Court does not find the above cases particularly helpful, other than to establish that the Jencks Act does not specifically provide for the return of materials covered by it (Harloff and Badalamenti), nor does it specifically prohibit it (Fried). As noted by the Sixth Circuit in Reid, "[t]he general aim of the statute is to restrict the use of Jencks statements to impeachment of a government witness by bringing to the attention of the jury during cross-examination of the witness any variances between his testimony and his pretrial statement." Id. But the statute has other another "important function" as well, and that is "the protection of potential government witnesses from threats of harm or other intimidation before the witnesses testify at trial." United States v. Presser, 844 F.2d 1275, 1285 (6th Cir. 1988); see also, United States v. Coppa, 267 F.3d 132, 138 (2d Cir. 2001) (citing Presser and noting that "early disclosure of the identities of potential witnesses could undermine undercover operations and ongoing investigations involving these witnesses").

Here, all but one of the Defendants are alleged to be members of the Mongols Motorcycle Club, which the Third Superseding Indictment describes as a criminal enterprise, whose members have committed multiple violent acts, including intimidating witnesses. Furthermore, the Government asserts that the "information contained in the Jencks material and individuals identified as potential witnesses also relate to other pending cases and ongoing criminal investigations," and that some Defendants have tried to "share information about the Government's case and witnesses with other members and associates of the enterprise." (Doc. No. 1575). To be sure, the allegations in the Third Superseding Indictment are just that, and the Government's contention about

5

Defendants' effort to share information are unproven, but they cannot simply be ignored.

Given the unique circumstances of this case, fundamental fairness dictates that the Government's motion be granted. The Government's request is not a matter of "unsavory gamemanship" as Defendants suggest (Doc. No. 1592 at 7). Rather, it is an effort to restore things to a pre-COVID-19 status to the extent possible. The parties agreed, and the Court approved, a timetable that would disclose Jencks Act material and a witness list approximately thirty days before trial. While Defendants undoubtedly would prefer, notwithstanding expense, to be able to review and study the material for the next year in order to prepare for trial, "defendants are not given such material to facilitate general trial preparation or as a form of pre-trial discovery." United States v. Garcia, 406 F. Supp. 2d 304, 305 (S.D.N.Y. 2005). Rather, "it is customary for the Government to turn over such material either shortly before the trial, or in longer trials a week or so before the witness is expected to testify, in order to avoid trial delay while defense counsel reviews the material in preparation for cross-examination." Id.

### III.

In any event, the Court does not view the Government's request as implicating the Jencks Act, so much as it does a discovery issue. Pursuant to Rule 16(c) of the Federal Rules of Criminal Procedure "the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(c). Furthermore, "the rules are not designed to be comprehensive." Carlson v. United States, 837 F.3d 753, 762–63 (7th Cir. 2016). Instead, Rule 57 is "a catch-all provision . . . expressly addressing what to do when the rules fail to address a question," United States v. Shippley, 690 F.3d 1192, 1195 (10th Cir. 2012), by providing that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules

6

Case 3:17-cr-00130   Document 1597   Filed 06/05/20   Page 6 of 10 PageID #: 8797

of the district," Fed. R. Crim. P. 57(b), which serves as). Therefore, in the absence of any controlling statute, rule, or appellate authority, it would appear that the "[f]inal decision . . . must rest, as it does so very often in procedural and evidentiary matters, within the good sense and experience of the district judge." Palermo v. United States, 360 U.S. 343, 353 (1959); see also United States v. DeClerck, 252 F. App'x 220, 222 (10th Cir. 2007) ("A district judge has the discretion to run a trial in a manner that is fair and efficient to both sides."); United States v. McSherry, 226 F.3d 153, 156 (2d Cir. 2000) (citation omitted) ("'The firing point of the legal system is with the trial judge who is best situated to administer the law and protect the rights of all.'"); United States v. Webster, 162 F.3d 308, 339 (5th Cir. 1998) (noting that "district court possesses inherent powers 'reasonably useful to achieve justice'"). Good sense and experience counsel that there is nothing improper about denying Defendants a windfall based upon the coronavirus, and holding the parties to their agreement in this case, particularly when it was endorsed by the Court.

Meyerholz's additional argument about the Jencks material including Brady material requires little discussion. The Sixth Circuit has held that "[w]hen Brady material sought by a defendant is covered by the Jencks Act, 18 U.S.C. § 3500, the terms of that Act govern the timing of the government's disclosure." United States v. Bencs, 28 F.3d 555, 561 (6th Cir. 1994) (citing Presser, 844 F.2d at 1283); accord United States v. Davis, 306 F.3d 398, 421 (6th Cir. 2002). " Put another way: the Jenks Act trumps Brady where impeachment evidence is Jencks Act material." United States v. Brazil, 395 F. App'x 205, 216 (6th Cir. 2010). Regardless, the Sixth Circuit "has held that due process requires only that disclosure of exculpatory material be made in sufficient time to permit the defendant to make effective use of that material at trial." United States v. Farley, 2 F.3d 645, 654 (6th Cir. 1993) (citing Presser, 844 F.2d at 1284). If thirty days before an April 2020 trial date was

7

sufficient, then thirty days before an April 2021 trial date is sufficient.

## IV.

Requiring the return of material after it has been disclosed obviously raises both practical and logistical concerns. As a practical matter, the Court cannot expect counsel or Defendants to forget what they have learned – "the cat is out of the bag" and the "bell has already been rung" (Doc. No. 1592 at 6, 8), so to speak. What the Court can do, and what the Government is really requesting, is that the material not be further disseminated, used, or studied during the year long hiatus caused by the coronavirus. Even under this scenario, Defendants will have had the material and witness list much longer than required by the rules, and much longer than their agreement contemplated, because they have already had an eight week preview, and the Government will be required to re-disclose the material a month before the April 1, 2021 trial date.

Moreover, the Government has made concessions in its reply brief that tend to eliminate or lessen most of the concerns raised by Defendants. For example, Defendants assert that some counsel have made notations on the witness list and this, being work product, should not be provided to the Government. The Court agrees, but this can be resolved by allowing counsel to retain their work product, while at the same time returning the witness lists provided by the Government, and destroying any copies of witness lists that do not contain work product. Similarly, counsel's concern about wasted effort and expense in formatting and encrypting the laptops for use by Defendants can be resolved simply by retrieving the laptops from the jails, securing them in counsel's office, and leaving them unexamined any further until the Jencks material and witness lists are re-disclosed on March 1, 2021. Likewise, where electronically searchable versions of Jencks Act material or the witness list have been created, it will not have to be deleted. Instead, counsel can simply certify that

8

the materials have been secured and will not be accessed again until March 1, 2021. In short, what the Government is seeking, and what the Court will require is a return (to the extent possible) to the status of the case before the Jencks Act materials and witness list were disclosed on March 10, 2020. Evidence provided by the Government before then is certainly fair game for counsels' use.

## IV.

Accordingly, the Government's "Motion Seeking Return of Jencks Material and Witness List" (Doc. No. 1575) is **GRANTED** as follows:

(1) Within ten (10) days of entry of this Order, counsel for each Defendant:

(A) shall return to the Government the Jencks Act material and witness lists disclosed on March 10, 2020, and destroy all copies thereof unless they contain work product or are electronically stored.

(B) shall retrieve the laptops that have been provided to Defendants at the detention facilities, and shall keep and secure those laptops until March 1, 2021; and

(C) shall certify compliance with these provisions;

(2) The Jencks Act material and witness list disclosed on March 10, 2020, shall be re-disclosed by the Government on March 1, 2021, at which time the laptops can be returned to the correctional facilities for access by Defendants in accordance with the Order (Doc. No. 1473) entered April 2, 2020, as revised by Order entered April 27, 2020 (Doc. No. 1541).

(4) Between now and March 1, 2021, Defendants and their counsel are prohibited from utilizing, in any fashion, the materials and witness lists that were disclosed by the Government on March 10, 2020. This prohibition, however, does not apply to any evidence or materials that were

provided before then, even if they were duplicated in the March 10, 2020 disclosures.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE